## WHITNEY, *complainant, versus* GILMAN.

The flowing of land by a reservoir dam, at distance from the mill, will not support a complaint which alleges that the flowing was occasioned by the dam at the mill, though the reservoir dam is maintained, merely to supply water for the mill.

Such a complaint may be amended, on terms, so as to charge that the flowing is occasioned by the reservoir dam.

WELLS, J., orally. — This is a complaint for flowage. The complainant represents that he is the owner of a tract of land set forth in the complaint, that the respondent has erected a flour-mill and dam, on the stream flowing out of North West Pond, by which the land described in the complaint, has been flowed, and for which flowage he seeks to recover damages.

It appears, that at the outlet of the pond, a reservoir dam is erected for the benefit of the respondent's flour-mill, by which the complainant's lands are flowed — that the flour-mill and dam of the respondent, is situated three quarters of a mile below the reservoir dam, — and that there is intermediate between these dams, a third dam, upon which a shingle-machine is erected.

It is obvious that no flowing is caused by the dam immediately connected with the flour-mill, — and that whatever injury the complainant may have suffered, is caused by the reservoir dam.

The counsel for the complainant, claims that the reservoir dam may be considered as well described in the complaint. The complaint definitely and clearly describes the land flowed, and that it is flowed " by reason of a certain flour-mill and dam, erected on, and across a stream or brook, running out of the aforesaid pond and stream, and below said premises," — " said dam erected, being necessary to raise a sufficient head of water for the working of said mill," &c. Now, what dam is meant by the language here used? The description clearly refers to the dam connected with the flour-mill and no other. The language used is to be taken in its ordinary and natural

sense.  To construe the language used as having reference to the reservoir dam, which is remotely connected with the flour-mill and not the dam by which the flour-mill is carried on, would be forced and unnatural.  The complaint then, cannot be sustained without an amendment.

The complainant seeks to amend by describing the flowage as caused by the reservoir dam.  A cause of action imperfectly set forth may be amended, but the Court have no power to allow an amendment by which a new cause of action is set forth.  Would the amendment prayed for be a new cause of action?  The land flowed, and the injury alleged to be done, remain the same.  Another dam upon the same stream, but which is necessary, and used for the same flour-mill is not entirely a new cause of action.  The allegation that the damage is caused by the respondent's dam remains unchanged.  An inaccurate specification and description of the position of the dam causing the injury, may be modified so as to conform to a true description of the cause of the injury.

This complaint was brought in the District Court, and comes here by appeal.  If the complainant had correctly described the cause of the injury complained of, the respondent might have submitted.  The litigation so far, has been without fault on the part of the respondent, who could not with safety to himself, have allowed the complainant judgment.  The amendment prayed for, may be allowed upon terms — the complainant to recover no costs to this term, and to pay the respondent his costs up to this time.

*Sanborn*, for the complainant.

*J. Appleton*, for the respondent.

NOTE. — For the report of this and of the following case, the Reporter acknowledges his indebtment to the kindness of a legal gentleman of Bangor by whose labors two of the earlier volumes of the Reports were so much enriched.